UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK LANE, individually,

Plaintiff,

v.

THE KROGER CO., a foreign corporation, registered and doing business in Washington as FRED MEYER STORE #25, and FRED MEYER STORES, INC., a foreign corporation, registered and doing business in Washington as FRED MEYER STORE #25,

Defendants.

Case No. C18-483RSM

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FAILURE TO ACCOMMODATE

## I. INTRODUCTION

This matter comes before the Court on Defendants Kroger and Fred Meyer Stores, Inc. (collectively "Defendants" or "Fred Meyer")'s Motion for Summary Judgment Regarding Failure to Accommodate Claim. Dkt. #26. Plaintiff Mark Lane opposes. Dkt. #32. For the reasons stated below, this Motion is DENIED.

## II. BACKGROUND

The Court has previously set forth certain background facts in a prior Order. *See* Dkt. #25. The Court will now focus only on those facts relevant to the claim at issue and necessary for the Court to reach a ruling.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FAILURE TO ACCOMMODATE - 1

Mark Lane started working for the grocery and retail chain Fred Meyer in 1997. Dkt. #33-1 ("Lane Dep.") at 30:14-16. At all times relevant to this case, he worked as a cashier assigned to operate/supervise self-checkout terminals for a Fred Meyer store in Bellingham, Washington. *See* Dkt. #26 at 2–4. Beginning in 2011, Mr. Lane sought various accommodations for multiple disabilities. *See* Dkt. #1-1 ("Complaint") at ¶¶ 3.3, 3.4, 3.7-3.10, 3.14, 3.21-3.22. The details of these early accommodations are not at issue in this Motion.

On March 4, 2014, District HR Manager Kevin Ruoff and in-store HR Manager Karla Booker met with Mr. Lane to discuss new accommodation requests. Dkt. #28 ("Ruoff Decl.") at ¶ 4; Dkt. #29 ("Booker Decl.") at ¶ 4; Dkt. #34 ("Lane Decl.") at ¶ 6. The content of this meeting was not memorialized in writing. The parties appear to agree that one of Mr. Lane's requests for accommodation was to "not go longer than two hours without a rest period." Lane Dep. at 90:22—92:14. Pursuant to the applicable collective bargaining agreement and state law, cashiers are required to get a break after working three hours. Ruoff Decl. at ¶ 4(d). Fred Meyer's practice was to relieve employees for breaks within a 30-minute window around the mid-point of a four-hour work period; that is, after the cashier had worked between one hour and 45 minutes and two hours and 15 minutes. *Id*. Fred Meyer contends that Mr. Ruoff and Ms. Booker said they could not guarantee the break would always occur before Mr. Lane has worked two hours, but that Fred Meyer's managers would make their "best efforts" to relieve him before two hours had passed. Ruoff Decl. at ¶ 4(d); Dkt. #27 Dkt. #27 ("McCollough Decl.") at ¶ 4; Booker Decl. at ¶ 4(d). On the other hand, Mr. Lane contends that he was granted his full request for this accommodation without exception. A genuine dispute exists as to this material fact.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
FAILURE TO ACCOMMODATE - 2

According to the declaration of front-end manager Dalene McCullough, after this meeting, Mr. Lane would sometimes work "a little more than two hours" because of increased customer traffic or because the store was short-staffed. McCollough Decl. at ¶ 4. Ms. McCullough says she discussed with Mr. Lane "many times" that "it was not possible to guarantee breaks at no more than two hours, but we would always make our best efforts." *Id.*

This break issue became critical on April 2, 2015. According to Fred Meyer, Mr. Lane was terminated that day because he left work in the middle of his shift, which it interpreted as a voluntary resignation. Dkt. #19 ("Cassels Decl.") at ¶ 3. Ms. McCullough states she worked four hours that day, until 6:30 p.m., and that the store was short-staffed and there was an unusually large number of customers at that time. McCullough Decl. at ¶ 9. Front-end supervisor Nichole Lewis states that the store was short-staffed and much busier than usual during her shift from 2:15 p.m. to 11:15 p.m. Dkt. #30 ("Lewis Decl.") at ¶ 4. These declarations do not describe how busy the lines for cashiers were at the exact time Mr. Lane left the store.

Mr. Lane states that he felt nauseous and anxious that day "due to the stress of not being timely relieved for my rest periods" consistent with his prior requests for accommodation. Dkt. #22 at ¶ 2. The parties disagree on the basic fact of whether Mr. Lane had worked more or less than two hours before he got a break that day. Fred Meyer contends that Mr. Lane took a 50+ minute break earlier that day based on electronic records for the self-checkout terminals. Dkt. #26 at 7 (citing McCollough Decl. at ¶ 10; Dkt. #31-2 (electronic cash register records) and Dkt. #31-3. Mr. Lane states via declaration that this was not the case, and argues that Fred Meyer is simply misinterpreting data from the electronic record systems. *See, e.g.,* Lane Decl. at ¶ 12 ("…the customer transaction logs submitted by Defendants are not timesheets nor time

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FAILURE TO ACCOMMODATE - 3

clocks, but logs of the customer transactions…"); and ¶ 14 ("While there may be a 'break' or 'gap' in customer transactions on the single SCO register that I logged into with my Operator ID to activate the SCO Terminal, it does not mean that I am on a break.").

At approximately 6:40 p.m., Mr. Lane informed his supervisor he was feeling sick and needed a break, and that once he got one he went to the restroom and vomited. *See* Dkt. #22 at ¶¶ 3–4; Lewis Decl. at ¶ 5–6. He apparently went home shortly thereafter, either informing the right people or failing to inform the right people that he was leaving due to feeling ill, depending on whose testimony is to be believed. He pleads both that he was terminated and that he was constructively discharged. *See* Complaint.

Following his termination, Mr. Lane filed a grievance with his union, United Food and Commercial Workers Union Local 21 ("Union"). The Union pursued the grievance through to arbitration. The matter was heard before Arbitrator Howell L. Lankford on February 24, 2016. *See* Dkt. #16-1. The Arbitrator ruled in favor of Fred Meyer and against Mr. Lane.

Mr. Lane filed this action in state court on March 12, 2018. Dkt. #1-1. He asserts the following causes of action: disability discrimination and failure to accommodate in violation of the Washington Law Against Discrimination ("WLAD"); retaliation in violation of the WLAD; constructive discharge in violation of public policy; and intentional and negligent infliction of emotional distress. *Id.* This case was removed by Fred Meyer on April 3, 2018. Dkt. #1. Most of Mr. Lane's claims have been addressed by the Court previously, *see* Dkt. #25; the instant Motion addresses only the failure to accommodate claim.

//

//

//

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
FAILURE TO ACCOMMODATE - 4

## III. DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Analysis

A disabled employee may bring a cause of action under the WLAD for either disability discrimination or for failure to accommodate his or her disability. *Johnson v. Chevron U.S.A., Inc.*, 159 Wn. App. 18, 27-28, 244 P.3d 438, 443 (2010). To establish a prima facie case of failure to accommodate, a plaintiff must show: "(1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the

employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality." *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 532, 70 P.3d 126 (2003) (emphasis, quotation and citation omitted). For purposes of this Motion, Fred Meyer concedes most of these elements are present, contesting only that it failed to affirmatively adopt available measures to accommodate Mr. Lane's disability. Dkt. #26 at 13.

Fred Meyer's first approach to this question is to highlight all of its other successful accommodations for Mr. Lane, and to gloss over its alleged failure on April 2, 2015, to accommodate the specific request above—that Mr. Lane be provided a break before he worked two straight hours. *See, e.g., id.* at 11 (Fred Meyer frames the question as "[w]hether [Fred Meyer] failed to reasonably accommodate Lane by making its best efforts to get him out on breaks before he worked more than two hours and 95% of the time Lane was relieved for breaks before he had worked more than two hours."). The Court notes that, even if Fred Meyer did an exemplary job accommodating Mr. Lane's other requests for accommodation, if Mr. Lane's testimony is ultimately to be believed, the failure to accommodate this one request was serious enough to lead him to vomit in the bathroom, require him to leave work, and ultimately led to his termination. The Court therefore is not interested in weighing other successful accommodations against this one request for accommodation. A genuine dispute as to this one request for accommodation is sufficient to prevent summary judgment on this claim.

Fred Meyer next asserts that Mr. Lane did not actually work longer than two hours before a break on April 2, 2015, citing records of cash register transactions. Dkt. #26. As

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
FAILURE TO ACCOMMODATE - 6

stated above, Mr. Lane contests the usefulness of these records and argues that "Defendant's own records show that extensive periods of inactivity on the reports is common." Dkt. #32 at 13–15.[1] Fred Meyer contests Mr. Lane's assessment of gaps in the transactions record. *See* Dkt. # 36 at 4–5. Of course, Mark Lane also states via deposition that he did work longer than two hours before a break that day. At this stage, the Court must view all evidence and draw all inferences in the light most favorable to the non-moving party. Assuming a favorable credibility determination, the Court could believe Mr. Lane's testimony over the record of cash register transactions, which are not the same thing as a punch clock. The Court finds that a genuine dispute as to these facts exist, and that this issue cannot be resolved on summary judgment.

Finally, Fred Meyer asserts that even if it failed to provide Mr. Lane a break within two hours, such an accommodation—or satisfying it 100% of the time—is not reasonable as a matter of law. Dkt. #26 at 12 ("the law requires a reasonable accommodation, not a perfect one, and [Fred Meyer] was not required to waive essential job duties or operational standards as an accommodation for Lane."). Fred Meyer cites Washington law for the proposition that an employee is not entitled to get a specific requested accommodation, and that an employer need only *reasonably* accommodate the disability. *Id*. at 13 (citing *Griffith v. Boise Cascade, Inc.*, 111 Wn. App. 436, 443, 45 P.3d 589 (2002); *Pulcino v. Federal Express Corp.*, 141 Wn.2d 629, 643, 9 P.3d 787 (2000)). Fred Meyer correctly points out that reasonable accommodation

---

[1] Fred Meyer contests Mr. Lane's foundation to assess these electronic transaction records and moves to strike certain paragraphs of his declaration. Dkt. #36 at 2. The Court finds that this issue is essentially moot as the Court can find a genuine dispute as to when Mr. Lane took breaks by relying solely on Mr. Lane's testimony as to his memory of that day. However, to the extent necessary, the Court finds that Mr. Lane is qualified to comment at least on the time stamps of activity contained in these records and the presence of gaps in activity. The Court need not address Fred Meyer's motion to strike references to a post-arbitration legal brief as the Court has not relied on such exhibit or arguments.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
FAILURE TO ACCOMMODATE - 7

does not require an employer to waive essential job functions or waive service or performance standards. *Id.* at 14 (citing *Davis*, 149 Wn.2d at 533–34).

The problem with these arguments is that Fred Meyer is currently asking the Court to determine the reasonableness of this accommodation as a matter of law rather than a matter of fact. The Court is not able to rule as a matter of law that providing regular breaks for Mr. Lane would have jeopardized Fred Meyer's ability to meet its service or performance standards. Such a question is mired in questions of fact.[2] The Court refuses to find that occasionally working over two hours was an essential job function for Mr. Lane—it is a remaining genuine dispute whether Fred Meyer agreed to waive this job function on March 4, 2014.

In its Reply brief, Fred Meyer also argues that "it is immaterial to this motion what was said in the March 2014 meeting," because "it is undisputed that in the year following that meeting, Lane was told many times that [Fred Meyer managers] would make their best efforts to relieve him before he worked more than two hours consistent with the needs of the business, but could not guarantee it." Dkt. #36 at 10. The Court disagrees. Disabled employees should be able to rely on their employer's promise to accommodate their disability. If Mr. Lane was offered a reasonable accommodation in a meeting with HR, but was later told by his manager that Fred Meyer could not guarantee this accommodation, and was repeatedly not provided this accommodation, this does not alone waive Mr. Lane's rights under the WLAD to that accommodation. The right to reasonable accommodations for disabilities is guaranteed by law,

---

[2] For example, Fred Meyer argues that "[a]s with any retail operation, [Fred Meyer] has customer service standards that include factors such as how long customers are required to wait in line to check out…. An obvious key factor in keeping customers from waiting too long to checkout is the number of registers that are open and operating, which is a function of the number of cashiers present and providing service to the customers." Dkt. #26 at 15. Later, Fred Meyer argues that "[i]t would not be a reasonable accommodation to require FMS to have its other cashiers stop assisting a customer in the middle of a transaction, or close down a register with a line of customers waiting in order to relieve Lane by his imposed deadline of two hours." *Id.* at 15. This line of argument relies on several assumptions of fact, such as the unavailability of other cashiers on duty, the unavailability of other cashiers in the store but not on duty, the unavailability of other cashiers who were not in the store that day for a variety of reasons, and Fred Meyer's inability to hire more cashiers to work at any given time. The record is simply too thin to support these factual assumptions.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
FAILURE TO ACCOMMODATE - 8

not by Fred Meyer. The fact that Fred Meyer repeatedly failed to satisfy an allegedly agreed-to accommodation should not be used against an employee as evidence that the accommodation had become watered down.

Given all of the above, numerous genuine disputes as to material facts preclude summary judgment. Fed. R. Civ. P. 56(a). The Court will deny this motion. This claim remains for trial.

## IV. CONCLUSION

Having reviewed the relevant briefing, attached declarations, and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion for Summary Judgment Regarding Failure to Accommodate Claim, Dkt. #26, is DENIED.

DATED this 9 day of May, 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE